1  Linda M. Dardarian (SBN 131001)
   ldardarian@gbdhlegal.com
2  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
3  Oakland, CA  94612
   Tel:  (510) 763-9800
4  Fax:  (510) 835-1417

5  William H. "Hassan" Murphy III (*Pro Hac Vice* to be filed)
   Hassan.Murphy@murphyfalcon.com
6  MURPHY FALCON & MURPHY
   1 South Street, 23rd Floor
7  Baltimore, MD  21202
   Tel:  (410) 951-8744
8  Fax:  (410) 539-6599

9  April Falcon Doss (CA SBN 164229)
   April.Doss@saul.com
10 SAUL EWING ARNSTEIN & LEHR, LLP
   500 E. Pratt Street, Suite 900
11 Baltimore, MD  21202
   Tel:  (410) 332-8798
12 Fax:  (410) 332-8178

13 Attorneys for Plaintiff and the Putative Class

14

15 **UNITED STATES DISTRICT COURT**

   **NORTHERN DISTRICT OF CALIFORNIA**
16

17 ELAINE PELC on behalf of herself and all others similarly situated,

   Case No.: Case #

18          Plaintiffs,

   **CLASS ACTION COMPLAINT**

19 vs.

   JURY TRIAL DEMANDED

20

21 Facebook, Inc., Cambridge Analytica LLC and SCL Group, Limited,

22          Defendants.

23

24

25

26

27

28

710815.1

Plaintiff Elaine Pelc, individually and on behalf of all others similarly situated, alleges the following against Defendants Facebook, Inc. ("Facebook"), Cambridge Analytica LLC ("CA" or "Cambridge Analytica") and SCL Group, Limited ("SCL") ("Defendants"), based on personal knowledge as to Plaintiff and Plaintiff's own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiff's undersigned counsel and publicly available information:

## SUMMARY OF THE CASE

1.      Facebook operates a social media company that facilitates the sharing of user's personal photographs, information, uniform resource locator links, geolocation data, audio-visual media and other data with family, friends, coworkers and other private relations. Facebook maintains a web site and develops software applications that facilitate that sharing of information with its more than 2.2 billion monthly users worldwide. Facebook users have the ability to share and restrict information based on their own specific criteria. The company's stated mission is "to give people the power to build community and bring the world closer together."[1]

2.      CA is a privately held company focused on data mining, data brokering, data analysis and strategic communication for use in the electoral process.  The firm has been involved in dozens of state and federal races in the United States.  In 2016 alone, CA assisted three major presidential campaigns in the primary and general elections, including the ultimately successful campaign of President Donald J. Trump.

3.      SCL is a privately held behavioral research and strategic communications firm that owns and operates CA.

4.      In order to create a Facebook account, a user must generate a personal profile using his or her email address or phone number, first name, last name, birthdate, and gender.  Users also agree to the Facebook terms and conditions before they are allowed to complete their individual profile.  Once a profile has been created, Facebook encourages the users to share significant amounts of personal information, including their name, birthdate, hometown, phone number, address, location, interests,

---

[1] https://www.facebook.com/zuck/posts/10154944663901634

CLASS ACTION COMPLAINT

710815.1

1   relationships, email address, history of websites visited, geolocation data, photos, and videos, amongst

2   others, referred to herein as "Personal Information."

3          5.       Despite statements to the contrary, Defendants have chosen to treat Plaintiff's Personal

4   Information with absolute disregard.  While Plaintiff's Personal Information was supposed to be

5   protected, controlled solely by the Plaintiff, and used for only expressly disclosed and limited

6   purposes, CA, and its parent company SCL, without authorization, or by exceeding whatever limited

7   authorization it, or its agents, had, improperly collected the Personal Information of up to 87 million

8   Facebook users, including Plaintiff.  Facebook, for its part, knew this improper data aggregation was

9   occurring and either failed to stop it, or actively avoided discovering such knowledge in order to

10  profess ignorance. Plaintiff brings this suit to protect her privacy interests and those of the class.

11                                            **PARTIES**

12  **A.    Class Representatives**

13         6.       Plaintiff Elaine Pelc is a citizen and resident of Baltimore, Maryland.  Plaintiff has held

14  a Facebook account for approximately 15 years. She has continuously and actively used Facebook

15  since then to connect with friends.  Her account is linked to 687 other Facebook users.  Plaintiff recalls

16  that during the 2016 Presidential election, she was frequently, and inexplicably, targeted with political

17  ads that she had not sought or requested while using Facebook.  Upon checking whether her account

18  was compromised by CA, Plaintiff was informed that though she is one of the 87 million people whose

19  Personal Information was compromised by CA without their consent or authorization.[2]  Plaintiff still

20  maintains and uses a Facebook account to this day.

21  **B.    Defendants**

22         7.       Facebook is incorporated in Delaware, and the Company's principal executive offices

23  are located at 1601 Willow Road, Menlo Park, California 94025. Facebook's registered agent for

24  service of process is CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N,

25  Sacramento, California 95833.

26

27  _____
[2] Plaintiff verified that her account was compromised using a link provided by Facebook.  That link
28  would verify whether a Facebook user's account had been compromised by CA.  That link is found
    at:https://www.facebook.com/help/1873665312923476?helpref=search&sr=1&query=cambridge/

710815.1

8.      Cambridge Analytica is a privately held Delaware limited liability company.  CA combines data mining and data analysis with strategic communication for the electoral process.  CA also maintains offices in Washington, D.C., New York and London.  It also does business throughout the United States, including in the Northern District of California.

9.      SCL is a privately held British company that owns CA.  On information and belief, SCL does significant business in the state of California.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) per the Class Action Fairness Act ("CAFA") as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 class members, at least one class member is a citizen of a foreign state different from a Defendant.

11.     The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) because a Defendant resides in this District, 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this District, and 28 U.S.C. § 1391(c) because Defendants are corporations that do business in and are subject to personal jurisdiction in this District. In addition, Facebook's Terms of Service require any suits against Facebook to be filed in the Northern District of California or a California state court located in San Mateo County – and that users (including Plaintiff and Class members) consent to the use of California law for any claims against Facebook.

## FACTUAL BACKGROUND

13.     On March 17, 2018, the *New York Times* published an article that detailed how the Defendants "Exploited the Facebook Data of Millions." (*The Guardian* published a similar article that same day corroborating the facts in the *New York Times* article.)  That article and subsequent revelations showed that Cambridge Analytica, a firm hired by the Trump campaign to target voters

710815.1

online, used the data of up to 87 million people obtained from Facebook without proper disclosures or

permission.[3]  The article further stated, in part

> **[T]he firm harvested private information from the Facebook profiles of more than 50 million users without their permission**, according to former Cambridge employees, associates and documents, making it one of the largest data leaks in the social network's history. The breach allowed the company to exploit the private social media activity of a huge swath of the American electorate, developing techniques that underpinned its work on President Trump's campaign in 2016.
>
> ***
>
> **But the full scale of the data leak involving Americans has not been previously disclosed — and Facebook, until now, has not acknowledged it**. Interviews with a half-dozen former employees and contractors, and a review of the firm's emails and documents, have revealed that Cambridge not only relied on the private Facebook data but still possesses most or all of the trove.

(Emphases added.)[4]

14.    CA harvested this data by hiring researcher Aleksandr Kogan to build a survey application titled "thisisyourdigitallife."  The application promised to help users better understand their own personality traits – and it promised to use the information submitted only for academic purposes.[5] CA paid Kogan $800,000 to build "thisisyourdigitallife" and allowed him to keep a copy of the source code for his own research.  In 2014, CA then posted "thisisyourdigitallife" on Facebook and claimed, in fine print, that it "was collecting information for academic purposes."[6]  Facebook never verified this claim before posting the application on its platform.

15.    Unbeknownst to the approximately 270,000 Facebook users who downloaded "thisisyourdigitallife", CA used the application to gain a backdoor to their data and, more importantly, that of all their Facebook contacts.  That allowed CA to access the data of up to 87 million other

---

[3] The initial reports had stated that "more than 50 million users" had their Personal Information accessed as part of this scheme.  Later reporting and admissions by Facebook showed that up to 87 million users had their accounts compromised by this scheme.
https://www.nytimes.com/2018/04/04/technology/mark-zuckerberg-testify-congress.html

[4] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html

[5] https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election

[6] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html

people who, according to Facebook, "had their privacy settings set to allow it."[7]  None of these additional Facebook users ever explicitly consented to having their Personal Information accessed by "thisisyourdigitallife," Cambridge Analytica or SCL.

16.     The Plaintiff had never downloaded "thisisyourdigitallife" or consented to having her Personal Information taken by CA.

17.     Indeed, Facebook's policies only allowed collection of a Facebook user's contact's data "to improve user experience."[8]  Those policies barred the sale of such data or its use for advertising purposes.[9] Facebook never monitored where the data accessed by CA or the "thisisyourdigitallife" went or how it was used.  As a former manager at Facebook, Sandy Parakilas noted, Facebook exhibited "zero" or "absolutely [no control]" over the data accessed by third party developers like CA. As he noted, "Once the data left Facebook servers there was not any control, and there was no insight into what was going on."[10]

18.     Once the data left Facebook's servers and was harvested by CA, user profiles, affinities and data were used to build psychological profiles that would allow for better advertisement targeting. A former contractor with Cambridge Analytica, Christopher Wylie, revealed how the data mining worked: "With their profiles, likes, even private messages, [Cambridge Analytica] could build a personality profile on each person and know how best to target them with messages."[11]

19.     Mr. Wylie stated that he had receipts, invoices, emails, legal letters and records that "showed how, between June and August 2014, the profiles of more than 50 million Facebook users had been harvested."[12]  These profiles "contained enough information, including places of residence, that

---

[7] https://www.forbes.com/sites/parmyolson/2018/03/20/face-to-face-with-cambridge-analytica-alexander-nix-facebook-trump/#674008da535f

[8] https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election

[9] *Id.*

[10] https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas

[11] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump

[12] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump

CLASS ACTION COMPLAINT

[CA] could match users to other records and build psychographic profiles."[13] As previously noted, Mr. Wylie's estimate was likely low by approximately 37 million users – as up to 87 million Facebook users had their data compromised by CA.

20.    In effect, CA was mounting a campaign of psychological warfare on millions of hapless victims without their knowledge or consent. Indeed, of up to 87 million Facebook users victimized by this scheme, "only about 270,000 users – those who had participated in the [thisisyourdigitallife] survey"[14] – had even consented to having their data harvested, and then only for academic research purposes, and without any authorization to having their data used to promote CA's advertisements or political goals.

21.    Furthermore, Facebook itself lies within the penumbra of blame.

22.    As the former Facebook operations manager responsible for monitoring data breaches by third party developers in 2011 and 2012, Sandy Parakilas stated that potentially hundreds of millions of Facebook users are likely to have had their private information harvested by companies that exploited the same terms as the firm that collected data and passed it on to Cambridge Analytica."[15]

23.    Parakilas stated that he warned senior executives at the company that its lax approach to data protection risked a major breach:  "[Parakilas's] concerns were that all of the data that left Facebook servers to developers could not be monitored by Facebook, so [Facebook] had no idea what developers were doing with the data" and that the company did not use enforcement mechanisms, including audits of external developers, to ensure data was not being misused.[16]

24.    Facebook's "trust model" was rife with security vulnerabilities and a near total abnegation of its responsibility to audit its own rules limiting use of Facebook data by third parties. Or, in Parakilas' own words, "[Facebook] felt that it was better not to know."[17]  As he mentioned,

---

[13] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html
[14] *Id.*
[15] https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas
[16] *Id.*
[17] *Id.*

CLASS ACTION COMPLAINT

1   during the time he was at Facebook, he "didn't see [Facebook] conduct a single audit of a [third party]

2   developer's systems."[18]

3       25.     That company philosophy apparently has carried on since Mr. Parakilas's departure

4   from Facebook, as amply evidenced by the hijacking of up to 87 million of the company's profiles by

5   Cambridge Analytica. Facebook's stated position—that "Protecting people's information is at the heart

6   of everything we do"[19]—is a far cry from the truth: In fact, Facebook had known about this security

7   breach for two years, but did little or nothing to protect its users.[20]

8       26.     On March 19, 2018, *Bloomberg* published an article entitled "FTC Probing Facebook

9   For Use of Personal Data, Source Says," disclosing that the U.S. Federal Trade Commission ("FTC")

10   is "probing whether Facebook violated terms of a 2011 consent decree of its handling of user data that

11   was transferred to Cambridge Analytica without [user] knowledge." Under the 2011 settlement with

12   the FTC, Facebook "agreed to get user consent for certain changes to privacy settings as part of a

13   settlement of federal charges that it deceived consumers and forced them to share more Personal

14   Information than they intended." The article further stated that "if the FTC finds Facebook violated

15   terms of the consent decree, it has the power to fine the company more than $40,000 a day per

16   violation."

17       27.     At all relevant times, Facebook has maintained a Data Use Policy on its website. At all

18   relevant times, the Data Use Policy advised Facebook users, in part:

19          Granting us permission to use your information not only allows us to
20          provide Facebook as it exists today, but it also allows us to provide you
          with innovative features and services we develop in the future that use the
21          information we receive about you in new ways. While you are allowing us
          to use the information we receive about you, you always own all of your
22          information. ***Your trust is important to us, which is why we don't share***
          ***information we receive about you with others unless we have:***

23        •    ***received your permission***

24        •    given you notice, such as by telling you about it in this policy; or

25

26    _____

[18] *Id.*

27   [19] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html

28   [20]https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html;
    https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas

- removed your name and any other personally identifying information from it.

(Emphases added) (https://www.facebook.com/full_data_use_policy).

28.     The depth of the data that Facebook collects from its users only magnifies the gravity of the breach of faith and data that CA's pilfering of user Personal Information represents.  As has been noted multiple times, Facebook keeps track of every message a user sends or receives, every file a user sends or receives, all of a user's contacts (including mobile phone contacts), all audio files a user sends or receives, the location of every user sign-in, the time of every user sign-in, the device of every user sign in and much more.  In addition, Facebook can even access user webcams and microphones without their knowledge.[21]

29.     Given the magnitude of the breach and the sensitivity of the Personal Information stolen, users may be at higher risk of identity theft and severe financial consequences.  Any data that could potentially identify a specific individual is personally identifiable information ("PII").  PII is at the heart of financial fraud and identity theft.  The vast troves of Personal Information provided by Facebook users includes their names, locations, birthdates, genders and, depending on the information uploaded by users, other information that would allow identity thieves to steal Facebook user identities.  All of this highlights the egregious dereliction of duty behind Facebook's inexplicable refusal to monitor third party use of its users' data.  Plaintiff and other Facebook users whose information has been taken by CA will have to monitor credit reports, pay for credit monitoring and/or restoration services and maintain a heightened level of vigilance as a result of Facebook's and CA's behavior.

30.     The incident has violated the privacy of millions of people in every state. The personal, sensitive information of up to 87 million people is now at high risk for identity theft and compromise, and will continue to be at risk as a direct result of the acts of Defendants.

---

[21] *See e.g.* https:www.theguardian.com/commentisfree/2018/mar/28/all-the-data-facebook-google-has-on-you-privacy.

CLASS ACTION COMPLAINT

710815.1

**CLASS ACTION ALLEGATIONS**

31.     Plaintiff seeks relief in her individual capacity and as a representative of other similarly situated individuals.  Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of themselves and as a class action on behalf of the following class:

> All persons who registered for Facebook accounts in the United States and whose Personal Information was obtained from Facebook by Cambridge Analytica without authorization or in excess of authorization.

32.     Excluded from the Class are Defendants and any entities in which any Defendant or their subsidiaries or affiliates have a controlling interest, is a parent or subsidiary, or which is controlled by any Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, assigns agents, and employees of any Defendant.  Also excluded from the Class are Plaintiffs' counsel and employees of their firms, the judge and court personnel assigned to this action, and any member of the judge's immediate family.

33.     **Numerosity:**  The members of each Class are so numerous that joinder of all members of any Class would be impracticable.  Plaintiff reasonably believes that Class members number approximately eighty-seven (87) million people in the aggregate and well over 1,000 in the smallest of the classes.  The names and addresses of Class members are identifiable through documents maintained by Defendants.

34.     **Commonality** and **Predominance:**  This action involves common questions of law or fact, which predominate over any questions affecting individual Class members.  These questions include:

> a.     Whether Facebook represented that it would safeguard Plaintiff's and Class members' Personal Information and not disclose it without consent;
>
> b.     Whether CA improperly obtained Plaintiff's and Class members' Personal Information without authorization or in excess of any authorization;
>
> c.     Whether Facebook was aware of CA's improper collection of Plaintiff's and Class members' Personal Information;

710815.1

d.   Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

e.   Whether Defendants breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

f.   Whether Defendants breached the terms of one or more contracts with Plaintiff and the Class;

g.   Whether Class members' Personal Information was obtained by CA;

h.   Whether Defendants had a reasonable expectation of privacy in their Personal Information that was intentionally intruded upon by one or more of the Defendants;

i.   Whether any intrusion on Plaintiff's or Class member's reasonable expectation of privacy was highly offensive to a reasonable person, caused harm, and was a substantial factor in causing that harm;

j.   Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

k.   Whether Defendants' conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

l.   Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

m.   Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

35.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the members of the class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

710815.1

36.     **Typicality:**  Plaintiff's claims are typical of the claims of the other members of their respective classes because, among other things, Plaintiff and the other class members were injured through the substantially uniform misconduct of Defendants.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff.  The claims of Plaintiff and those of other Class members arise from the same operative facts and are based on the same legal theories.

37.     **Adequacy of Representation:**  Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation and Plaintiff and her counsel will prosecute this action vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

38.     **Superiority:**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action.  The damages, harm, or other financial detriment suffered individually by Plaintiff and the other members of the class are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

39.     Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

40.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the

CLASS ACTION COMPLAINT

710815.1

disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

    a.    Whether Facebook represented that it would safeguard Plaintiff's and Class members' Personal Information and not disclose it without consent;

    b.    Whether CA improperly obtained Plaintiff's and Class members' Personal Information without authorization or in excess of any authorization;

    c.    Whether Facebook was aware of CA's improper collection of Plaintiff's and Class members' Personal Information;

    d.    Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    e.    Whether Defendants breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    f.    Whether Defendants breached the terms of one or more contracts with Plaintiff and the Class;

    g.    Whether Class members' Personal Information was obtained by CA;

    h.    Whether Defendants had a reasonable expectation of privacy in their Personal Information that was intentionally intruded upon by one or more of the Defendants;

    i.    Whether any intrusion on Plaintiff's or Class member's reasonable expectation of privacy was highly offensive to a reasonable person, caused harm, and was a substantial factor in causing that harm;

    j.    Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

    k.    Whether Defendants' conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

l.      Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

m.      Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

## CLAIMS ALLEGED ON BEHALF OF ALL CLASSES
### First Claim for Relief
**Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(Against Facebook)**

41.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in preceding and superseding paragraphs as though fully stated herein.

42.     Plaintiff brings this count on behalf of herself and the proposed class.

43.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code § 17200, *et seq.* prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." The conduct alleged herein is both a "business practice" and is unlawful within the meaning of the UCL.

44.     Facebook represented that it would not disclosure user's Personal Information without consent and/or notice.  It also required application developers, like CA, to obtain and utilize users' Personal Information in specified, limited ways.

45.     Plaintiff and Class members were persuaded to give consideration (their Personal Information and data) to Facebook pursuant to various terms and conditions, including Facebook's commitment to never share their Personal Information and data except under those terms and conditions.  Facebook violated those terms and conditions by failing to uphold the promise of the privacy protections in those terms and conditions.

46.     Facebook's conduct was unlawful under the UCL in that it:

a.      Induced Plaintiff and Class members to share their Personal Information and data pursuant to specific privacy terms promulgated by Facebook, and

b.      Facebook violated these terms unlawfully and in the regular course of its business.

710815.1

47.     Facebook failed to abide by these representations.  Facebook did not prevent improper disclosure of Plaintiff's and the Class's Personal Information.

48.     Facebook's acts and omissions as alleged herein were unlawful and in violation of, *inter alia*,

    a.     Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), in that it engaged in unfair or deceptive acts or practices affecting interstate commerce and

    b.     Cal. Bus. & Prof. Code § 22576, in that Facebook operates an online service that collects personally identifiable information from individual consumers who use Facebook, and Facebook failed to comply with the provisions of its posted privacy policy either (i) knowingly and willfully, or (ii) negligently and materially.

    c.     Federal Stored Communications Act, 18 U.S.C. § 2701, *et seq*., in that it knowingly divulged to a person or entity the contents of electronic communications held in electronic storage by Facebook.

49.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Defendants' unlawful business practices. In particular, Plaintiff and Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

50.     As a result of Facebook's unlawful business practices, Plaintiff and the class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

### Second Claim for Relief
**Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice**
**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**
**(Against Facebook)**

51.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in preceding and superseding paragraphs as though fully stated herein.

CLASS ACTION COMPLAINT

710815.1

52.     By reason of the conduct alleged herein, Facebook engaged in unfair "business practices" within the meaning of the UCL.

53.     Defendant Facebook represented to its users, including Plaintiff and Class members, that it would not disclose their Personal Information without consent and/or notice.  It also asked third party software application developers, like CA, to obtain and utilize users' Personal Information in circumscribed ways.

54.     Defendant Facebook stored the Personal Information of Plaintiff and members of the Class in its electronic and consumer information databases. Defendants represented to Plaintiff and members of the classes that their Personal Information would remain private. Defendants engaged in unfair acts and business practices by representing that they would not disclose this Personal Information without authorization, and/or by obtaining that Personal Information without authorization, and then facilitating the disclosure of that Personal Information.

55.     Facebook's conduct was unfair under the UCL in that Facebook:

    a.     Routinely and systematically breached the terms and conditions that are part of the contract between Facebook and Plaintiffs and Class members;

    b.     Induced users to enter into agreements whose data privacy terms Facebook did not enforce and did not intend to enforce;

    c.     Intentionally failed to monitor third party software developers to assure compliance with Facebook's privacy policies; and

    d.     Facebook violated these terms (a) knowingly and willfully, (b) negligently and materially, or (c) both.

This unfair conduct originated in California, caused harm to the Plaintiff and Class members and defeated the expectation created in the Plaintiff and Class members by Facebook's terms and conditions.

56.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Defendant'' unfair business practices. In particular, Plaintiff and Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

710815.1

57.     As a result of Defendant Facebook's unfair business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief pursuant to the UCL.

### Third Claim for Relief
### Violation of California's Unfair Competition Law ("UCL") – Fraudulent Business Practice
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (Against Facebook)

58.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in preceding and superseding paragraphs as though fully stated herein.

59.     By reason of the conduct alleged herein, Facebook engaged in fraudulent "business practices" within the meaning of the UCL.

60.     Defendant Facebook represented to its users, including Plaintiff and Class members, that it would not disclose their Personal Information without consent and/or notice.  It also asked third party software application developers, like CA, to obtain and utilize users' Personal Information in circumscribed ways.

61.     Defendant Facebook stored the Personal Information of Plaintiff and members of the Class in its electronic and consumer information databases. Defendants represented to Plaintiff and members of the classes that their Personal Information would remain private. Defendants engaged in fraudulent acts and business practices by securing the data of Plaintiff and Class members by way of false and fraudulent statements and omissions regarding Facebook's true intentions regarding the protection of Personal Information. Facebook breached these representations (a) knowingly and willfully, (b) negligently and materially, or (c) both.

62.     As a result, Plaintiff and Class members have suffered injury in fact, including lost money or property.

63.     This fraudulent conduct originated in California, caused harm to the Plaintiff and Class members and defeated the expectation created in the Plaintiff and Class members by Facebook's terms and conditions.

710815.1

64.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Defendant's fraudulent business practices. In particular, Plaintiff and Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

65.     As a result of Defendant Facebook's fraudulent business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief pursuant to the UCL.

**Fourth Claim for Relief**
**Negligence**
**(Against All Defendants)**

66.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in preceding and superseding paragraphs as though fully stated herein.

67.     Defendants owed a duty to Plaintiff and the Class to exercise reasonable care in obtaining and protecting their Personal Information, and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

68.     Defendants knew that the Personal Information of Plaintiff and the Class was personal and sensitive information that is valuable.

69.     By being entrusted by Plaintiff and the Class to safeguard their Personal Information, Facebook had a special relationship with Plaintiff and the Class. Plaintiff and the Class signed up for Facebook's services and agreed to provide their Personal Information with the understanding that Facebook would take appropriate measures to protect it, and would inform Plaintiff and the Class of any breaches or other security concerns that might call for action by Plaintiff and the Class. But, Facebook did not. Facebook failed to prevent CA's improper obtaining of Plaintiff's and the Class's Personal Information.

70.     CA had a duty to refrain from obtaining Plaintiff's and the Class's Personal Information in without their consent or authorization.

71.     Defendants breached their duties by failing to adopt, implement, and maintain adequate security measures to safeguard the Personal Information, or by obtaining that Personal Information without authorization.

710815.1

72.     Facebook also breached its duty to timely disclose that Plaintiff's and the other class members' Personal Information had been, or was reasonably believed to have been, improperly obtained.

73.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and the Class, their Personal Information would not have been improperly obtained. Defendants' negligence was a direct and legal cause of the theft of the Personal Information of Plaintiff and the Class and all resulting damages.

74.     The injury and harm suffered by Plaintiff and the Class members was the reasonably foreseeable result of Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other class members' Personal Information.

75.     As a result of Defendants' breach of their duty of care to Plaintiff and the Class, Plaintiff and the Class are entitled to recover actual, consequential, and compensatory damages from Defendants in an amount according to proof.

**Fifth Claim for Relief**
**Breach of Contract**
**(Against Facebook)**

76.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in preceding and superseding paragraphs as though fully stated herein.

77.     In order to create a profile and become a user of the Facebook social media platform, users had to affirmatively agree to Facebook Terms and Conditions and the Facebook Privacy Policy ("User Agreements").

78.     The User Agreements are a valid and enforceable contract between Facebook and the Plaintiff and class members.

79.     Under the terms of the User Agreements the Plaintiff and Class members shared sensitive Personal Information in exchange for access to Facebook's social media platform and related software applications.  In doing so, the Plaintiff and Class members relied on Facebook's explicit promise that it would not share their Personal Information with third parties without their consent.

80.     This exchange of the Plaintiff's and Class members' Personal Information for access to Facebook's platform and related applications is at the heart of the User Agreements.

710815.1

81.     As an inducement to submit their Personal Information to Facebook, Plaintiff and Class members were promised by Facebook that their Personal Information would be safeguarded and never shared without their consent.  In addition, Facebook promised the Plaintiff and Class members that it would only use their Personal Information pursuant to the specific means and circumstances identified in the User Agreements.

82.     Facebook breached the User Agreements in sharing the Plaintiff's and Class members' Personal Information with third parties without their consent.  As a result, the Plaintiff and Class members suffered damages.

83.     The actual and appreciable damages of the Plaintiff and the Class are equivalent to the value of the Personal Information that Facebook improperly shared with CA and SCL through Facebook's knowing, reckless or willful breach of the User Agreements.

84.     Facebook's breach of the User Agreements is even more notable because it involved the valuable and sensitive Personal Information related to the Plaintiff's and the Class members' individual voting preferences, political opinions and personal views.

85.     Facebook's breach of the User Agreements has caused significant damages to the Plaintiff and the Class.

86.     Plaintiff and the Class are entitled to legal damages, injunctive relief and equitable relief as a result of Facebook's breach of the User Agreements.

**Sixth Claim for Relief**
**Intrusion Upon Seclusion**
**(Against All Defendants)**

87.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in preceding and superseding paragraphs as though fully stated herein.

88.     Plaintiff and the Class put Personal Information in their Facebook profiles that included sensitive Personal Information, including birthdays, personal photographs, family photographs, personal relationship status, religious beliefs, political views, their home towns, their personal interests, their current locations, their education and work history and their interests, activities and preferences.  Given the profoundly intimate nature of the Personal Information shared, Plaintiff and Class members had an expectation of privacy in that information.

19

710815.1

89.     Plaintiff and the Class members were led to believe by Facebook that they had control over who could access that information using Facebook's privacy settings.  In exchange for that promise in the User Agreements, Plaintiff and Class members put their Personal Information on Facebook's servers.  Their expectation was that their Personal Information would remain private, as was promised by the User Agreements.

90.     By taking the Plaintiff's and Class members' Personal Information from their Facebook accounts, SCL and CA intentionally intruded upon their private information.

91.     Facebook aided and abetted SCL's and CA's intrusion upon the Plaintiff's and Class members' seclusion because it knew or should have known about this intrusion, and because it gave substantial assistance to SCL and CA by allowing their software applications to access Plaintiff's and/or Class members' information without their consent.

92.     Facebook's actions or failure to act caused substantial damage to Plaintiff and Class members.

93.     Defendants' intrusion and theft of Plaintiff's and Class members' Personal Information from their Facebook accounts was highly offensive to a reasonable person in that it: 1) included the taking of very detailed and penetrating Personal Information, 2) that intrusion and theft were motivated by a desire for profit and political influence, and 3) that intrusion occurred in a setting where the Plaintiff and Class members expected to control access to their most personal and private Personal Information.

94.     The Plaintiff and Class members were harmed by the Defendants' intrusion into their Personal Information.  Not only was that Personal Information used without authorization and for purposes that may have been contrary to the Plaintiff's and Class members' wishes, the Defendants' intrusion also created a real risk of identity theft for the Plaintiff and Class members – and has imposed upon them the burden of monitoring their personal data to limit the risk of injury from identity theft and any costs associated with paying for credit monitoring and accessing credit reports.

95.     The harm to the Plaintiff and the Class was made evident by the fact that CA paid Facebook $7 million to acquire the Personal Information of the Plaintiff and Class members.

96.     Defendants' actions were a substantial factor (and perhaps the sole factor) in causing the harm to the Plaintiff and Class members.

97.     Defendants' intrusion into the private affairs of the Plaintiff and Class members was intentional, willful and done with the conscious disregard for the rights or safety of the Plaintiff and Class members.

98.     Defendants' conduct was malicious, fraudulent and/or oppressive.  Plaintiff and Class members are therefore entitled to recover punitive and exemplary damages in an amount according to proof, as well as actual, consequential and compensatory damages in amount according to proof.

<u>**Seventh Claim for Relief**</u>
**Violation of the Federal Stored Communications Act (18 U.S.C. § 2701 *et seq.*)**
**(Against All Defendants)**

99.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in preceding and superseding paragraphs as though fully stated herein.

100.    The Stored Communications Act ("SCA") requires that an entity that provides electronic communication services to the public "not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

101.    The SCA grants a private right of action against any person or entity who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." *See* 18 U.S.C. § 2702(a) and § 2707.

102.    The Court may assess damages under the SCA including "actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000."  18 U.S.C. § 2707(c).

103.    Facebook and Cambridge Analytica are electronic communications providers under the SCA.

104.    Facebook and CA intentionally exceeded any authorization that they may have had to Plaintiff and Class member stored electronic communications by allowing CA to access Plaintiff and Class members' Personal information and stored electronic communications.

105.    Facebook knowingly allowed CA to intentionally exceed any authorization it may have had to Plaintiff and Class members' Personal Information and stored electronic communications.

106.    As a result of Defendants' violations of the SCA, Plaintiffs and Class members are entitled to statutory damages, actual damages, and reasonable attorney's fees and costs, as well as declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter an Order:

A.    Certifying the Class and appointing Plaintiff as Class Representative;

B.    Finding that Defendants' conduct was negligent, deceptive, unfair, unlawful and fraudulent as alleged herein;

C.    Enjoining Defendants from engaging in further negligent, deceptive, unfair, unlawful and fraudulent business practices alleged herein;

D.    Finding that Facebook breached its contract with Plaintiff and Class members;

E.    Awarding Plaintiff and the Class members nominal, actual, compensatory, consequential and punitive damages;

F.    Awarding Plaintiff and the Class members statutory damages and penalties, as allowed by law;

G.    Awarding Plaintiff and the Class members restitution and disgorgement of Defendants' illicit profits;

H.    Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

I.    Awarding Plaintiff and the Class members reasonable attorneys' fees, costs and expenses, and;

J.    Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

CLASS ACTION COMPLAINT

710815.1

1    Dated:  May 18, 2018                    Respectfully submitted,

2                                            GOLDSTEIN, BORGEN, DARDARIAN & HO

3
                                            /s/ Linda M. Dardarian
4                                            Linda M. Dardarian

5                                            Attorneys for Plaintiff and the Putative Class

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

710815.1